IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCUS WASHINGTON, #214362, )
 )
 Plaintiff, )
 )
v. ) CASE NO. 2:13-CV-30-MHT
 ) (WO)
 )
LOUIS BOYD, et al., )
 )
 Defendants. )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, Marcus Washington ("Plaintiff"), an indigent state inmate, alleges that correctional officials acted with deliberate indifference to his safety by failing to protect him from a spontaneous attack by a fellow inmate during a previous term of confinement at the Draper Correctional Facility ("Draper"). *Compl. - Doc. No. 1* at 3. Washington also complains that Defendants did not conduct a proper investigation of the incident and denied him due process during disciplinary proceedings related to a charge lodged against him for fighting with a weapon. *Id*. Washington names Warden Louis Boyd, Deputy Warden Phyllis Billups, Officer Mario Reese, Officer Kelvin Harris and Sgt. Curtis Nolen as defendants in this cause of action.[1] Washington seeks declaratory relief,

---

[1]Although Plaintiff initially identifies Sgt. Nolen as Sgt. Nolan, Defendants advised that his correct name is Nolen and the plaintiff later utilizes this name in documents filed with the court. Consequently, and in the interest of clarity, the court will refer to this defendant as Sgt. Nolen.

monetary damages and expungement of the disciplinary from his prison record.  *Id*. at 4.

Defendants filed a special report supported by evidentiary materials, including affidavits and relevant documents from the Plaintiff's prison file, and a supplement to the special report containing photographs of the injuries suffered by the inmates involved in the altercation.  Pursuant to the standard order allowing a response by the plaintiff, the court deems it appropriate to treat the special report and supplement thereto as a motion for summary judgment.  *Order of April 23, 2013 - Doc. No. 18*.  Thus, this case is now pending on Defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's unsworn responses to the reports, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by Plaintiff.  Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient

[favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) (internal citation omitted). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . ."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by

requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004)

("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Absolute Immunity

To the extent Plaintiff sues Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see*

*Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Deliberate Indifference to Safety

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-845 (1994) (internal quotations and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id.* at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware,

exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.  "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff[] and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates" as well.  *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984).  The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.  *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)[.]"  *Purcell ex rel. Estate of Morgan v. Toombs County, Ga*., 400 F.3d 1313 (11th Cir. 2005).  "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'  *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).'"  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements

are necessary to demonstrate an Eighth Amendment violation.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).  With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-1029 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ***he must also draw the inference*** . . . .   The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  . . .  ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***."  *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue

> must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .   It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with

establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . . However,

in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 Fed. App'x 894, 896 (11th Cir.2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  The plaintiff has the burden of showing that the defendant was in a position to intervene but failed to do so.  *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012) (*citing Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Plaintiff must first demonstrate an objectively substantial risk of serious harm existed and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner."  *Johnson v. Boyd*, 568 Fed. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100.  If he establishes these objective elements, Plaintiff must then satisfy the subjective component.  To do so, Plaintiff "must [show] that the defendant subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk

of serious harm exists - and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 Fed. App'x 375, 377 (11th Cir. 2005).

Plaintiff alleges that Defendants acted with deliberate indifference to his safety with respect to an attack perpetrated against him by inmate Craig Banks on November 17, 2012. The complaint indicates that Plaintiff seeks to hold Defendants Boyd, Billups and Nolen liable because the facility was overcrowded, only two guards were assigned to the dorm at the time of the attack and neither guard was in a position to prevent the attack. *Compl. - Doc. No. 1* at 3. As support for this latter assertion, Plaintiff alleges that Defendant Reese was absent from the dorm prior to the attack. *Id*. Plaintiff also complains that Defendant Harris failed to come to his aid after the attack.[3] *Id*. Plaintiff does not allege he complained to Defendants or any other prison official that he was in danger of being attacked by inmate Banks. Moreover, the record is devoid of evidence that Plaintiff notified Defendants of a previous incident or threat by inmate Banks from which they could infer that a substantial risk of harm existed to Plaintiff prior to the attack at issue.

(i) Inadequate Security. Plaintiff maintains that Defendants Boyd, Billups and Nolen failed to protect him from attack by inmate Banks due to overcrowding and the failure to assign an adequate number of correctional officers to A-Dorm. *Compl. - Doc.*

---

[3]It is undisputed that Plaintiff was in the upstairs area of the dorm watching television at the time of the altercation with Banks. The court therefore notes that Plaintiff could have no personal knowledge regarding whether Defendant Reese was present in some other area of the dorm outside of his view from the second floor television area. Thus, Plaintiff's wholly conclusory assertion regarding Reese's absence from the dorm is due no weight by this court.

*No. 1* at 3.   Defendants deny acting with deliberate indifference to Plaintiff's safety. Specifically, there is no evidence before the court that Defendants had knowledge of any impending risk of harm, substantial or otherwise, posed by inmate Banks to Plaintiff.   In addition, the evidentiary materials establish that an appropriate number of officers were assigned to and present in the dorm at the time of the incident made the basis of this complaint.  *Defendants' Exh. 2 (Aff. of Kelvin Harris) - Doc. No. 16-2* at 1; *Defendants' Exh. 4 (Aff. of Mario Reese) Doc. No. 16-4* at 1.

At 9:40 p.m. on November 17, 2012, Defendant Harris was roving the downstairs area of Dorm-A.   Directly after the altercation between inmates Plaintiff and Banks, Defendant Harris observed Banks entering the downstairs bathroom with blood on his face. *Defendants' Exh. 2 (Aff. of Kelvin Harris) - Doc. No. 16-2* at 1.   Defendant Harris immediately radioed for assistance from additional officers.  *Id*.  He then secured inmate Banks and escorted him to the front of A-Dorm.  *Id*.   At the time of receiving a call for assistance, Defendant Reese was roving the rear, downstairs area of A-Dorm. *Defendants' Exh. 4 (Aff. of Mario Reese) Doc. No. 16-4* at 1.   Defendant Reese proceeded to the second floor of the dorm where he observed Plaintiff in the bathroom attempting to clean his injuries.  *Id*.   Defendant Reese handcuffed Plaintiff and escorted him to Sgt. Nolen for questioning.  *Id*.   Defendant Reese thereafter escorted Plaintiff to the health care unit for treatment of his injuries.  *Id*. at 2.

In his affidavit, defendant Nolen provides the following information:

On November 17, 2012 at approximately 9:40 PM Officer Kelvin Harris summoned for me to report to A-Dorm.  At approximately 9:41 PM I arrived at A-Dorm where I observed Officer Harris had inmate Craig Banks . . . handcuffed and [Banks was] bleeding above his left eye.  Officer Harris reported to me that he observed inmate Banks running into the downstairs bathroom with what appeared to be blood on his face.  I immediately ordered all inmates in A-Dorm to report to their assigned beds in an effort to locate a suspect.  As the inmates were reporting to their beds, Officer Mario Reese observed inmate Marcus Washington . . . in the upstairs bathroom of A-Dorm attempting to clean blood from his head and he had several cuts and shaving cream [on] his head.  Officer Reese immediately escorted inmate Washington to the shift office for questioning.  At approximately 9:48 PM I questioned inmate Washington concerning his injuries and he stated that he was sitting in the upstairs area of A-Dorm watching TV when inmate Banks approached him, tossed shaving cream [on] his head and began cutting him with an unidentified object.  Inmate Washington further stated that he did not know why inmate Banks cut him.  At approximately 9:55 PM I questioned inmate Banks concerning the incident.  Inmate Banks stated that earlier on November 17, 2012 he was using the A-Dorm upstairs bathroom when an inmate attacked him from behind and began choking him.  Inmate Banks further stated that the inmate went into his pocket and robbed him of a cellular phone and that's when the inmate released him and he noticed the inmate was inmate Washington.  Inmate Banks also stated that he recognized inmate Washington because they were confined together at Holman Correctional Facility.  Inmate Banks stated that later that night he and inmate Washington began to argue concerning that incident and during the argument he noticed that inmate Washington was in possession of a knife.  Inmate Banks stated that he tossed the shaving cream at inmate Washington due to him having a knife in his possession and they began fighting.  Inmate Banks denied he was carrying a weapon.

I verbally reprimanded inmates Banks and Washington on their negative behavior.  At approximately 10:15 PM Officer Reese escorted inmate Washington to Staton Health Care Unit for a body chart.  At approximately 10:35 PM inmate Washington was released from Staton Health [Care] Unit and reassigned to [the] Draper Segregation Unit [pending disciplinary action for fighting with a weapon]. At approximately 10:40 PM

Officer Harris escorted inmate Banks to Staton Health Care Unit for a body chart.  At approximately 11:00 PM inmate Banks was released from Staton Health Care Unit and reassigned to Draper Segregation's Unit [pending disciplinary action for fighting with a weapon].

*Defendants' Exh. 3 (Aff. of Curtis Nolen) - Doc. No. 16-3* at 1-3; *Defendants' Exh. 5 (Incident Report) - Doc. No. 16-5* at 3-4.  Correctional officers conducted a search of A-Dorm for weapons and the stolen cell phone but did not locate any weapons or the phone.  *Id*. at 4.

Plaintiff alleges that Defendants Boyd, Billups and Nolen acted with deliberate indifference to the overcrowding and under staffing at Draper which created an environment ripe for the attack by inmate Banks.  Plaintiff, however, does not provide any facts in support of this allegation nor does he assert that he at any time feared for his safety from Banks.  Moreover, the record is devoid of evidence that Plaintiff informed any of Defendants he was at risk of attack by Banks.

There is no probative evidence before the court of "an objectively substantial serious risk of harm" posed by inmate Banks to Plaintiff prior to the attack at issue as is necessary to establish deliberate indifference.  *Marsh*, 268 F.3d at 1028-1029.  Furthermore, even if Plaintiff had satisfied the objective component, his deliberate indifference claim nevertheless fails as he has not established that Defendants were subjectively aware of any risk of harm to him posed by Banks.  *Johnson v. Boyd*, 568 Fed. App'x 719, 722 (11th Cir. 2014) (complaint properly dismissed for failure to state a claim because "[n]owhere does

17

the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker].”); *Johnston v. Crosby*, 135 Fed. App’x 375, 377 (11th Cir. 2005) (Where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials “had subjective knowledge of the risk of serious harm presented by [fellow inmate]” and “introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt.”); *Murphy v. Turpin*, 159 Fed. App’x 945, 948 (11th Cir. 2005) (“[W]e readily conclude the district court did not err by dismissing [Plaintiff’s] failure-to-protect charge for failure to state a claim. . . . [Plaintiff] did not allege that the defendants had notice that he was in danger from . . . the inmate who attacked him.  Simply put, the allegations of [Plaintiff’s] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by [the inmate-attacker].  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his claim fails.”); *Staley v. Owens*, 367 Fed. App’x 102, 108 (11th Cir. 2010) (Plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over

a span of several years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to."); *Harrison v. Culliver*, 746 F3d 1288, 1300 (11th Cir. 2014) (Although increasing the number of officers in an area of the facility "may have improved security, [the warden's] decision not to do so did not create a substantial risk of harm. *Cf. Connick v. Thompson*, [563] U.S. [51], ----, 131 S.Ct. 1350, 1363, 179 L.Ed.2d 417 (2011) ('[Section 1983] does not provide plaintiffs or courts *carte blance* to micromanage local governments throughout the United States.'"). In light of the foregoing, summary judgment is due to be granted in favor of Defendants Boyd Billups and Nolen on the claim alleging that they acted with deliberate indifference to Plaintiff's safety.

(ii) <u>The Dorm Officers</u>. The undisputed evidence indicates that Defendants Harris and Reese were roving the front and rear downstairs areas of A-Dorm at the time the physical altercation occurred between inmates Plaintiff and Banks. Thus, the officers were performing their assigned duties at this time. Plaintiff's conclusory assertion that Defendant Reese "left [the] assigned dorm unattended" at the time of the altercation, *Compl. - Doc. No. 1* at 3, is not supported by the record nor Plaintiff's own responses. Moreover, as explained above, this assertion, standing alone, provides no basis for relief.

To the extent the claim made by Plaintiff against Defendant Reese can be construed to allege that Reese was not in the area of the attack when it occurred so that he could have

intervened, this claim entitles Plaintiff to no relief as liability attaches only if the defendant was in a position to intervene in the altercation. "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 Fed. App'x 894, 896 (11th Cir. 2010). "An officer who fails to intervene in a fight between inmates can only be held liable if he 'was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff.' *Glispy v. Raymond*, 2009 WL 2762636 (S.D.Fla., Aug.28, 2009) (citing *Ensley*, 142 F.3d at 1407; *Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986))." *Seals v. Marcus*, 2013 WL 656873, at *7 (M.D.Ga. 2013). The plaintiff has the burden of demonstrating that the defendant was in a position to intervene but failed to do so. *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012) (*citing Hadley v. Gutierrez*, 526 F.3d 1324, 1330–1331 (11th Cir. 2008)). By the very nature of this claim, Plaintiff concedes that Defendant Reese was not in a position to intervene and summary judgment is therefore due to be granted in favor of Defendant Reese.[4]

---

[4]The court has liberally construed the complaint to contain a "failure to intervene claim" and addressed this claim in accordance with various panel opinions of the Eleventh Circuit which rely on *Ensley* to dispose of this type of claim. The court is aware that the Eleventh Circuit in *Johnson* noted "[w]hile it is well settled that *Ensley* applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force, we have not explicitly adopted this holding in a situation involving an officer observing a fight between inmates." 568 Fed. App'x at 722 n.2.

Plaintiff complains that Defendant Harris failed to come to his aid *after* the attack. *Compl. Doc. No. 1* at 3. Although Defendant Harris acknowledges that he did not personally render aid to Plaintiff after the attack, Harris asserts that under the circumstances at hand he undertook appropriate measures to gain control of the situation and obtain the assistance of other officers in addressing the matter. Moreover, it is undisputed that Defendant Reese responded to the call for officer assistance, immediately located Plaintiff and ensured that Plaintiff received necessary aid after the attack. Based on the undisputed facts, the court concludes that Defendant Harris did not act with deliberate indifference towards Plaintiff in the aftermath of the altercation. Consequently, Defendant Richardson is entitled to summary judgment on this claim.

### C. Due Process Challenge to Disciplinary Action

Inasmuch as the complaint challenges the due process afforded Plaintiff for the disciplinary imposed upon him for fighting with a weapon, this claim entitles Plaintiff to no relief.

The physical altercation between Plaintiff and Banks occurred on November 17, 2012. During this altercation, both inmates suffered injuries which officers determined had been caused by an unidentified weapon. Defendant Harris initiated disciplinary action against Plaintiff for violation of Rule #910, fighting with a weapon. *Defendants' Exh. 5 - Doc. No. 16-5* at 21-27. On November 18, 2012, Officer Fredrick Johnson served Plaintiff

notice of the disciplinary charge and the scheduled date for the disciplinary hearing related to this charge. *Id*. 21. Plaintiff signed for receipt of the disciplinary and identified two inmate witnesses he wised to call at the hearing. *Id*. Upon completion of the noticed disciplinary hearing, during which Plaintiff had an opportunity to submit evidence, present the testimony of his witnesses, provide testimony himself and question the arresting officer, the hearing officer, Issac Coach, found Plaintiff guilty of the charged offense. *Id*. at 25-26. The sanctions imposed for this disciplinary infraction consisted of the loss of canteen, telephone and visiting privileges, placement in segregation for forty-five days and referral for classification review. *Id*. at 26.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in

22

relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Sandin*, 515 U.S. at 485-486 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.").  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him, confinement in the least restrictive prison environment or a particular classification level because the resulting restraints are

not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485

("Discipline by prison officials in response to a wide range of misconduct falls within the

expected parameters of the sentence imposed by a court of law."). In addition, a temporary

denial of privileges does not impose an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the

deprivations imposed upon Plaintiff based on the challenged discipline did not "exceed the

sentence [imposed by the trial court] in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force." *Id*. This court must therefore

determine whether the actions about which Plaintiff complains involve the deprivation of

a state-created liberty interest as defined by the standard set forth in *Sandin*.     As the

Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to

the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*.  Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of privileges, referral for classification review and short-term confinement in segregation "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff.  *Id*. at 485.  In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  Thus, Plaintiff's due process challenge to the disciplinary fails under the law as established in *Sandin*.

### D.  Lack of Adequate Investigation

Plaintiff maintains that Defendants Nolen and Harris violated his constitutional rights by failing to adequately investigate the physical altercation in which he engaged with

inmate Banks.  This allegation, however, fails to state a claim cognizable in this cause of action.

"It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Oklahoma City v. Tuttle,* 471 U.S. 808, 816  (1985).  "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196 (1989).   "The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F.Supp.3d, 394, 414 (N.D. N.Y. 2014); *Wilkins v. Illinois Dept. of Corrections*, 2009 WL 1904414, *9 (S.D. Ill. 2009) ("Because inmates do not have a due process right to [an investigation] at all, an allegation that any investigation which is actually conducted by prison officials was 'inadequate' or 'improper' does not state a constitutional claim."); *see also Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D. N.Y. 2003) (prisoners do not have a due process right to an investigation of grievances).  Based on the foregoing, the court concludes that the alleged lack of an adequate investigation does not rise to the level of a constitutional violation and, therefore, provides Plaintiff no basis for relief.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of Defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against Plaintiff.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before March 1, 2016.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th  Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 16th day of February, 2016.

 /s/   Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE